## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAHMAL WILLIAMS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-640** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.***,** | : | |
| **Defendants.** | : | |

### MEMORANDUM

**Goldberg, J.**                                                                 **August 27, 2021**

Plaintiff Jahmal Williams, who is proceeding *pro se*, brings this civil action challenging the constitutionality of the conditions of his confinement while a pretrial detainee at Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania. (*See* ECF No. 10.) For the following reasons, I will dismiss Williams's Amended Complaint[1] in its entirety for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). However, Williams will be granted leave to file a second amended complaint.

### I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[2]

Williams initiated this action by filing a Complaint on February 12, 2021. (ECF No. 1.) He did not, however, pay the fees necessary to commence a civil action in this Court, or file an application to proceed *in forma pauperis* along with a certified copy of his prisoner account statement. I granted Williams several opportunities to correct the initial deficiencies in his filings,

---

[1]      The Amended Complaint serves as the governing pleading because it supersedes the prior pleading. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted), *cert. denied*, 140 S. Ct. 1611 (2020). Accordingly, I will screen the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

[2]      The facts set forth in this Memorandum are taken from Williams' Amended Complaint.

and Williams eventually filed a Motion to Proceed *In Forma Pauperis*, as well as a prisoner account statement. (*See* ECF Nos. 3, 4, 5, 6, 7, 8, 9.)

On May 11, 2021, Williams, along with several others incarcerated at CFCF, filed an Amended Complaint seeking to add numerous plaintiffs and defendants to this matter. (*See* ECF No. 10.) The Amended Complaint was signed by Williams, as well as Justin Davis, Da'Sean Ford, Bill Dawkins, Kasheem Cryon, Nadi Hatchett, Zunir Walker, Luis Leon, Segers, Ronald P. White, Brian Schofftstall, Nadeer Baker, William Castillo, Luis Gonzalez, Travis Kelly, and Shawn Fairy. (ECF No. 10 at 2-3.)[3] As of the filing of the Amended Complaint, none of the new plaintiffs paid the fees necessary to commence a civil action, or filed an application to proceed *in forma pauperis* along with a certified copy of his prisoner account statement. As a result, by Order dated May 18, 2021, I directed the Clerk of Court to amend the docket to include the additional plaintiffs and defendants, and granted the new plaintiffs additional time to submit the necessary documentation to proceed as plaintiffs in this case. (*See* ECF No. 11.)

Two of the additional plaintiffs, Da'Sean Ford and Zunir Walker, subsequently submitted their own pleadings under the present Civil Action Number 21-640. (ECF Nos. 15, 16, 17, 19, 20.) Tahjie Davilla, who was not one of the additional plaintiffs listed in the Amended Complaint, also filed an Amended Complaint. (ECF No. 13.) Because Ford, Walker, and Davilla each filed an Amended Complaint on their own behalf that alleged independent claims, by Order dated July 6, 2021, I severed their filings into new matters to be addressed separately. (*See* ECF No. 21.)[4]

---

[3]     I adopt the pagination supplied by the CM/ECF docketing system.

[4]     The Federal Rules of Civil Procedure do not contemplate multiple governing pleadings filed in a single civil action. *See Boyer v. Johnson Matthey, Inc.*, Civ. A. No. 02-8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004) ("A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21.").

Additionally, the individuals who were added to the docket as named Plaintiffs in accordance with my prior Order who failed to either pay the fees or file the paperwork necessary to commence a civil action, were dismissed without prejudice as named Plaintiffs.  (*See* ECF Nos. 11, 21.)[5]

In the Amended Complaint, Williams alleges that he brought this case because CFCF failed to comply with the District Court's Orders in *Remick v. City of Philadelphia*, Civ. A. No. 20-1959,[6] and repeatedly describes the present matter as a class action lawsuit.  (*See, e.g.*, ECF No. 10 at 2-3.)  He purports to speak on behalf of all pretrial detainees housed at CFCF.  (*See id.*)  Nevertheless, for the reasons stated above, I will address the claims raised in the Amended Complaint as they pertain to Williams alone.

The Amended Complaint, which is hand-written, and is, at times difficult to understand, names the following Defendants: (1) City of Philadelphia, (2) U.S. Attorney General, (3) U.S. Secretary of United States, (4) Pennsylvania Attorney General, (5) Pennsylvania Secretary of State, (6) Mayor, (7) Governor, (8) President, (9) Institution(s) Commissioner Warden, (10) Superintendent/Custodian, (11) Deputy Warden, (12) Sergent(s), (13) Lieutenant(s), (14) Correctional Officer(s), (15) Curran-Fromhold Correctional Institution, and (16) Corizon Medical Department and Mental Health Department.  (ECF No. 10 at 2.)  Williams generally alleges that his rights secured by the Sixth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution have been violated while incarcerated at CFCF.  (*Id.* at 2, 4.)  Without further

---

[5]     These individuals are: Justin Davis, Bill Dawkins, Kasheem Cryon, Nadi Hatchett, Luis Leon, Segers, Ronald P. White, Brian Schofftstall, Nadeer Baker, William Castillo, Luis Gonzalez, Travis Kelly, and Shawn Fairy.  (*See* ECF No. 21.)

[6]     In *Remick v. City of Philadelphia*, the members of the putative class sought declaratory and injunctive relief, as well as habeas corpus relief, arguing that the conditions of confinement in the Philadelphia Department of Prisons' facilities created a heightened and unreasonable risk of COVID-19 for any confined person.  (*See* Civ. A. No. 20-1959, ECF No. 1.)

explanation, he also cites "statutory violations" including, RICO, conspiracy, tax evasion, theft, kidnapping, "enticing slavery", "various Internal Revenue Codes", "Fair Debt Collection Practices", and "Securities Exchange Commission Provisions."[7] (*Id.* at 4.)

Williams alleges that CFCF is understaffed such that inmates are "being denied a basic shower, phone call, visitation, legal access to attorneys [libraries] to provide a defense for pro-se litigants civil and criminal, housing units are inadequately kept unclean and unreasonably deemed safe." (*Id.* at 6.)  He further asserts that he and other inmates have "even been denied medical attention covid related and any unrelated medical needs," and have been provided inadequate mental health care due to inadequate staffing.  (*Id.*)  Williams also alleges due process violations in that "[t]hose of us, such as myself, who dare question the infrastructure of this skeleton of procedural structure get held accountable for the officials lack of accountability." (*Id.* at 7.)  He claims that "so far as disciplinary action there isn't even a system in place the accused is called a lockin with no hearing, no write up, no nothing in reference of due process of law." (*Id.*)  While Williams does not specify the relief sought, it appears that he seeks monetary damages.  (*See id.*)

## II.    STANDARD OF REVIEW

Because Williams is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[7]    To the extent Williams is pursuing claims under statutes other than § 1983, I cannot discern any plausible basis for a claim under the statutes or legal concepts alluded to in the Complaint. The remainder of this Memorandum will therefore focus on Williams's § 1983 claims.

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  The court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff," but disregard "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" in determining whether a plaintiff has stated a claim.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018) (quotations omitted).  In other words, conclusory allegations do not suffice to state a claim.  *Iqbal*, 556 U.S. at 678.  As Williams is proceeding *pro se*, I construe his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

It is clear that Williams is attempting to bring claims pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.  (*See* ECF No. 10.)  However, his claims are articulated in a generalized, conclusory manner.  Thus, it is difficult to determine the factual contours of what happened, when it happened, and who was involved in a given set of events.  Liberally construing Williams's Amended Complaint as I must do, I understand the Amended Complaint as presenting

claims regarding the conditions of his confinement, for denial of access to the courts, for deliberate indifference to medical needs, and due process violations. Despite that liberal construction, Williams has not alleged a plausible basis for a claim against any Defendant.

### A.    Lack of Personal Involvement

As an initial matter, I note that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (the personal involvement of each defendant in the alleged constitutional violation is a required element and a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 825 F.2d at 1207.

Putting aside any issues of immunity, Williams's Amended Complaint does not provide any reasonable basis, whether factual or legal, that any named Defendant is responsible for the conditions at CFCF or any alleged constitutional violation. The factual allegations set forth in the Amended Complaint are sparse and generalized. That is, Williams has articulated no allegation against any individual Defendant.[8]  He simply does not allege any factual details about the involvement of any Defendant in the alleged constitutional violations. Consequently, Williams has failed to present plausible claims against any Defendant. I note that Williams's Amended Complaint is deficient for other reasons as well, as discussed below.

---

[8]    With respect to Defendants U.S. Attorney General, "U.S. Secretary of United States," Pennsylvania Attorney General, Pennsylvania Secretary of State, Governor, and "President," it is unclear what allegations Williams could raise against them regarding the conditions at CFCF.

**B.      Supervisory Liability**

Williams names as some of the Defendants "Institution(s) Commissioner Warden," "Superintendent/Custodian," "Deputy Warden," "Sergent(s)," and "Lieutenant(s)."  To the extent Williams seeks to assert claims based on a supervisory liability theory against these Defendants, he has failed to plausibly do so.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015).  First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*

Williams does not allege that any of these Defendants, with deliberate indifference to the consequences, maintained a policy, practice or custom that resulted in the conduct that allegedly violated Williams's constitutional rights, nor does he allege that these Defendants participated in the alleged improper conduct.  Accordingly, Williams has failed to state plausible claims of supervisory liability against these Defendants.

**C.      Claims against Defendants CFCF and Corizon Medical Department and Mental Health Department**

The § 1983 claims against CFCF are not plausible because CFCF is not a "person" under Section 1983.  *Cephas v. George W. Hill Corr. Facility*, Civ. A. No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr. Facility*, Civ. A. No. 13-7680,

2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976). Similarly, the United States Court of Appeals for the Third Circuit has made clear that a prison medical department is not a "person" for purposes of § 1983 liability. *Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845-46 (3d Cir. 2011) (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (per curiam). Therefore, neither CFCF, nor Corizon Medical Department and Mental Health Department, is a proper defendant in this case under § 1983.

### D.   Claims against Defendant City of Philadelphia and Mayor Kenney

Williams has also named the City of Philadelphia and its Mayor as Defendants. To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal quotation omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (internal quotation omitted). A plaintiff demonstrates that a custom was the proximate cause of his injuries by establishing that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted). A plaintiff may also state a basis for

municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019), *cert. denied sub nom. City of Camden, New Jersey v. Forrest*, 140 S. Ct. 902 (2020).

Although Williams named the City of Philadelphia and Mayor Kenney as Defendants in this action, the Amended Complaint is devoid of any allegations about acts or omissions of the City or Mayor Kenney. Because Williams did not allege any facts suggesting that a constitutional violation occurred as a result of an approved municipal policy or governmental practice or custom, he has not alleged a plausible basis for a *Monell* claim against the City or Mayor Kenney.

### E.    Deliberate Indifference to Medical Needs

Assuming *arguendo* that Williams properly alleged personal involvement against appropriate Defendant, Williams's allegations nonetheless are conclusory such that he has not pled plausible constitutional claims. For example, Williams alleges that he has "been denied medical attention covid related and any unrelated medical needs," and has been provided inadequate mental health care due to inadequate staffing. (ECF No. 10 at 6.)

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[9] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately

---

[9]    As it appears that Williams was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Peters v. Brown*, 793 F. App'x 118, 123 (3d Cir. 2019) (per curiam) ("We have found it constitutionally sufficient . . . to analyze pretrial detainees' claims of inadequate medical care under the familiar deliberate indifference standard."); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (per curiam).

indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Because Williams's Amended Complaint does not provide any factual allegations pertaining to the nature of the alleged medical need or the purported deliberate indifference, it does not support a plausible Fourteenth Amendment claim under the *Iqbal* pleading standard.

### F.    Denial of Showers

Williams alleges that he was denied showers but provides no further specifics regarding this claim. (*See* ECF No. 10 at 6.) To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (per curiam) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). "Unconstitutional punishment [under the Fourteenth Amendment] typically includes both

objective and subjective components." *Stevenson v. Carroll,* 495 F.3d 62, 68 (3d Cir. 2007).

"[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently

serious" and the subjective component asks whether 'the officials act[ed] with a sufficiently

culpable state of mind[.]'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).   To satisfy

the subjective component, a detainee generally must allege that prison officials acted with

deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's

health or safety. *See Wilson*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173

(3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference

could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x

132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to

apply a different standard here as we have applied the 'deliberate indifference' standard both in

cases involving prisoners and pretrial detainees." (internal citations omitted)).  Because Williams's

Amended Complaint does not provide any factual allegations pertaining to the nature or length of

the alleged deprivation, it does not support a plausible Fourteenth Amendment claim under the

*Iqbal* pleading standard.  Accordingly, Williams has not stated a constitutional claim based on the

denial of showers.[10]

### G.     Denial of Phone Calls and Visitation

---

[10]      Williams also alleges that the "housing units are inadequately kept unclean and
unreasonably deemed safe."  (ECF No. 10 at 6.)  I recognize that unsanitary conditions can support
a cognizable § 1983 conditions of confinement claim.  *See, e.g., Conway v. Cty. of Camden*, Civ.
A. No. 16-9550, 2017 WL 3783263, at *2-3 (D.N.J. Aug. 31, 2017) (finding plaintiff sufficiently
pled a plausible basis for a claim that he experienced unconstitutionally punitive conditions as a
detainee where he alleged, *inter alia*, that he was housed in a two-person cell with three other
people and required to sleep on the floor next to the toilet with only a thin mattress, facility had
only one set of fingernail clippers for all inmates on the unit and plaintiff sustained a skin infection,
mold caused plaintiff to sustain respiratory problems, there was a lack of hot water in the cells,

Williams alleges that he has been denied phone calls and visitation but provides no further factual allegations with regard to these claims.  (*See* ECF No. 10 at 6.)  Although prisoners may have a limited First Amendment right to communicate with family and friends, *see Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003), "prisoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (per curiam) (quoting *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994)); *Randall v. Cty. of Berks, Pa.*, Civ. A. No. 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) (noting that "a pretrial detainee does not have unfettered telephone access").  Similarly, inmates do not generally enjoy a constitutional right to visitation. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (no due process right to unfettered visitation); *Block v. Rutherford*, 468 U.S. 576, 585-88, (1984) (pretrial detainees have no constitutional due process right to contact visits).

Williams has failed to allege other than in conclusory terms that he has been denied phone calls and visitation.  Therefore, he has again failed to state plausible claims for constitutional violations under the *Iqbal* standard.  *See Aruanno v. Johnson*, 568 F. App'x 194, 195 (3d Cir. 2014) (per curiam) (conclusory allegations "concerning [prisoner's] lack of phone access to friends and family" failed to state a claim); *Almahdi*, 310 F. App'x at 522 (rejecting First Amendment claim based on telephone restrictions where "Almahdi makes no assertion—and there is no evidence — that he lacked alternative means of communicating with persons outside the prison") (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002)); *Riley v. Ortiz*, Civ. A. No. 17-

---

plaintiff sustained insect bites, and was housed with inmates infected with M.R.S.A.).  Here, however, Williams's conclusory statement regarding the lack of cleanliness at CFCF does not sufficiently state a plausible claim.

3233, 2017 WL 4228064, at *2 (D.N.J. Sept. 22, 2017) ("A loss of visitation privileges is an ordinary incident of prison life.") (citations omitted).

### H.    Access to Courts

Without further explanation, Williams alleges that he was denied "legal access to attorneys librarys to provide a defense for *pro se* litigants civil and criminal." (ECF No. 10 at 6.)  I construe this statement as an allegation that Williams has been denied access to the courts.  "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).  "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' -- that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)); *see also Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010) (A pretrial detainee "making an access to courts claim is required to show that the denial of access caused actual injury.").  Furthermore, "the underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

Here, Williams has failed to plausibly allege any actual injury as a result of the Defendants' conduct that could equate to a denial of access to the courts.  Additionally, Williams has not alleged what underlying nonfrivolous claims he was unable to pursue as a result of any Defendant's actions.  I will dismiss these claims to the extent they are alleged.  *See, e.g.*, *Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim); *see also Talley v. Varner*, 786 F. App'x 326, 328 (3d Cir. 2019) (per curiam)

(no denial of access to the courts where inmate "failed to allege what underlying nonfrivolous claims he was unable to pursue due to [a] two-week delay" caused by the defendants); *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 566 F. App'x 113, 116 (3d Cir. 2014) (per curiam) ("Here, Williams alleged only that he was told he could not send mail without having sufficient funds.  He has not alleged that he lost a claim because of the supposed denial, and therefore he has not made out an access-to-the-courts claim.").[11]

### I.    Due Process Claims

Williams alleges further that "[t]hose of us, such as myself, who dare question the infrastructure of this skeleton of procedural structure get held accountable for the officials lack of accountability."  (ECF No. 10 at 7.)  He claims that "so far as disciplinary action there isn't even

---

[11]    I note that "[u]nder the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him."  *Prater v. City of Philadelphia*, Civ. A. No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)).  The *Prater* court explained:

> With respect to restrictions on attorney contact with clients, "[t]he Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys" and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'"  *Id.* at 184 (fourth alteration in original) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974)).  Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'"  *Id.* at 187 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)).  A prison regulation restricting a pretrial detainee's contact with his attorney will be unconstitutional where it "'unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense.'"  *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).

It does not appear from the Amended Complaint that Williams is claiming that he has been denied access to his attorney in his pending criminal case.  In any event, Williams has not adequately pled such a claim.

a system in place the accused is called a lockin with no hearing, no write up, no nothing in reference of due process of law." (*Id.*)

The Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Id.* Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Quiero v. Ott*, 799 F. App'x 144, 146 n.6 (3d Cir. 2020) (per curiam); *Stevenson*, 495 F.3d at 70.

Williams's allegations are insufficient to state a plausible due process claim. Given the absence of any meaningful description of events that gave rise to a disciplinary action, Williams's general allegation that procedures were not followed does not support a plausible inference that he did not receive process he was due. *See Jackson v. Holland*, Civ. A. No. 20-5207, 2021 WL 1696280, at *4 (E.D. Pa. Apr. 28, 2021) (dismissing claim based on misconduct because prisoner's "conclusory assertion that he was denied the opportunity to call witnesses [was] unsupported by any factual allegations such as which, if any, of the named Defendants acted to violate his rights, who he sought to call as a witness and what that witness might have offered in his defense to the misconduct charge"); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" (internal quotations omitted)).

## IV.    CONCLUSION

For the foregoing reasons, I will dismiss Williams's Amended Complaint in its entirety for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[12]  While Williams has failed to state a plausible claim at this time, I am not prepared to find that Williams, if granted the opportunity, cannot state a plausible claim for relief against the appropriate and relevant defendants.  Accordingly, Williams's Amended Complaint will be dismissed without prejudice, and Williams will be granted leave to file a second amended complaint within thirty (30) days if he wishes to proceed with the case.  Williams's filing docketed as a "Motion to Add Parties," in which Williams asks to add additional prisoners as plaintiffs in this case will be denied because Williams may not raise claims on behalf of others.

An appropriate Order follows.

---

[12]    Since Williams has failed to allege a basis for a constitutional claim on his own behalf, it follows that he has not alleged any basis for proceeding as a class action.  In any event, Williams, as a non-attorney, may not represent a class of inmates.  *See Hagan v. Rogers*, 570 F.3d 146, 158-59 (3d Cir. 2009) ("[W]e do not question the District Court's conclusion that *pro se* litigants are generally not appropriate as class representatives.").