IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAHMAL WILLIAMS, *Plaintiff*, v. CITY OF PHILADELPHIA *et al.*, *Defendants*. | Civil Action No. 21-cv-640 |

### ORDER

**AND NOW**, this 1st day of March, 2023, upon consideration of Defendants' Motion to Dismiss (ECF No. 32) and Plaintiff's response in opposition thereto (ECF No. 42), I find as follows:

**I. FACTS**

1. Plaintiff Jahmal Williams ("Williams"), pro se alleges the following facts about his pre-trial detention at Curran-Fromhold Correctional Facility (CFCF). These facts will be viewed in the light most favorable to Williams as the nonmoving party. See Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011).

– From December 4, 2020 through June 30, 2021, Williams was locked in his cell for 23 to 24 hours each day. Correctional officers told Williams that inadequate staffing was the reason inmates were locked in their cells for so long. (Second Amended Complaint p.[1] 1.)

– Williams caught covid-19 because CFCF houses covid-positive inmates with covid-negative inmates and because CFCF does not provide "chemical and sanitation procedures" or "clean housing units" and did not permit inmates to wash frequently. (Id.)

---

[1] Page numbers refer to the pages as they appear on ECF.

- When Williams asked to speak to a supervisor about extended locked-in-cell periods and access to the law library, Williams was sprayed with mace by Officer Slater. Williams was then not allowed to shower for about 10 days. (Id. at 2.)

- CFCF pretrial detainees are payed below minimum wage for "hard labor" such as laundry, kitchen, receiving room, and maintenance. (Id.) Williams contends this is a Thirteenth Amendment violation.

- CFCF pretrial detainees are prohibited from cleaning, washing, and preparing a legal defense. (Id.)

- The Warden, Superintendent, and Commissioner are all policymakers at CFCF. Correctional officers told Williams that the Commissioner is responsible for locked-in-cell time. (Id. at 3.)

2. Williams brings claims under the Eighth Amendment, Fourteenth Amendment Due Process Clause, and the Thirteenth Amendment. Williams names as Defendants Officer Slater, John Doe Superintendent, Warden Michelle Farrell, and Commissioner Blanche Carney.

## II. LEGAL STANDARD

3. To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

4. To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and

(3) "where there are well-pleaded factual allegations, . . . assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

5. When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

### III. DISCUSSION

#### A. Municipal Liability

6. Defendants ask that all claims against the City of Philadelphia and against City employees in their official capacities be dismissed for failure to allege a municipal policy, custom, or practice as required by Monell v. Dep't of Social Services, 436 U.S. 658 (1978).

#### Claim Related to Locked-in-Cell Time

7. As to Williams's claim related to locked-in-cell time, Williams has alleged that he was told by correctional officers that this policy was put in place by the Commissioner. It is a plausible inference that decisions about how much time inmates should spend in their cells would be made pursuant to a policy rather than the haphazard actions of individual correctional officers. And Defendants admit in their motion that a policy existed, stating "CFCF took steps to limit the spread of the virus amongst its incarcerated population, which included limiting exposure between individuals within the carceral system." (Defendants' Brief at 5.)

8. In addition, Defendants' cases are distinguishable, as they involve attempts to hold municipalities liable for one-off violations by individual employees. See Wood v. Williams, 568 F.

App'x 100, 102-03 (3d Cir. 2014) (alleging retaliatory firing); Torres v. City of Allentown, No. 07-cv-1934, 2008 WL 2600314, at *1 (E.D. Pa. June 30, 2008) (alleging excessive force during a search). By contrast, Williams challenges how CFCF is run on a day-to-day basis.

9.  I therefore find that Williams has sufficiently alleged municipal liability with respect to his claim regarding periods of locked-in-cell time.

### Macing Incident

10.  As to Williams's claim related to the alleged macing incident, I agree with Defendants that there are no facts alleged suggesting CFCF had a policy of macing pretrial detainees who question its policies. This claim will be dismissed as to the City and its employees in their official capacities.

### Thirteenth Amendment Claim

11.  For the reasons stated below, I find that Williams's Thirteenth Amendment Claim is insufficiently pled for other reasons, and I therefore will not address whether Williams has adequately alleged municipal liability as to this claim.

**B.  Personal Involvement of the Warden, Commissioner, and Superintendent**

12.  Defendants next ask that claims against the Warden, Commissioner, and Superintendent be dismissed for lack of personal involvement.

13.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id.

14.  All claims against "John Doe Superintendent" will be dismissed because there are no

allegations as to the involvement of this Defendant. The other claims are addressed below.

### Locked-in-Cell Time

15. With respect to Williams's claim related to locked-in-cell time, I conclude that Williams's allegation that correctional officers told him that the Commissioner was responsible for this policy is sufficient to plausibly allege the Commissioner's personal involvement. I will not dismiss this claim as to the Commissioner.

16. However, I agree with Defendants that Williams has not sufficiently alleged that the Warden was personally involved in this policy. The Second Amended Complaint contains no allegation of the Warden's involvement. Williams argues that he put the Warden on notice of conditions at CFCF by filing grievances, but, while the Second Amended Complaint mentions grievances, it does not allege who those grievances were shared with. Williams attaches grievances to his brief in opposition, but those documents do not reflect whether they were shared with the Warden.

17. I will therefore dismiss Williams's claim related to locked-in-cell time with respect to the Warden.

### Other Claims

18. To the extent Williams asserts claims against the Warden and Commissioner related to the macing incident, there are no facts to suggest the personal involvement of either, and these claims will be dismissed. For reasons already discussed, I will not address personal involvement with respect to Williams's Thirteenth Amendment claim.

### C. Effect of <u>Remick</u> Class Action Settlement

19. On March 11, 2022, the Honorable Berle M. Schiller certified a class of "[a]ll persons who are currently or will be in the future confined in the Philadelphia Department of Prisons, and are or will be subjected to illegal or unconstitutional conditions of confinement as a result of policies and restrictions implemented in response to the COVID-19 pandemic, and the PDP's staffing shortage." <u>Remick v. City of Philadelphia</u>, No. 20-cv-1959 (E.D. Pa.), Doc. No. 153. Plaintiff appears to be a member of this class and therefore a party to the <u>Remick</u> lawsuit.

20. On July 12, 2022 (after Defendants' filed their motion to dismiss in this case), Judge Schiller approved a class action settlement in <u>Remick</u>. <u>See</u> No. 20-cv-1959, Doc. No. 176. Under the terms of the settlement, the Philadelphia Department of Prisons must provide certain minimum out-of-cell hours to inmates. On May 25, 2022, Judge Schiller appointed a monitor to ensure compliance with the settlement agreement.

21. Defendants ask that Plaintiff's claims for injunctive relief be dismissed because they are duplicative of relief sought (and, now, ordered) in <u>Remick</u>.

22. It is true that the existence of another, related lawsuit may counsel against awarding injunctive relief in this case to avoid frustrating the <u>Remick</u> settlement through potentially conflicting injunctions. <u>See</u> <u>Milbourne v. Cumberland County Dep't of Corr.</u>, No. 20-cv-8264, 2020 WL 7351215, at *2 (D.N.J. Dec. 14, 2020). But the mere fact that injunctive relief may ultimately be inappropriate does not mean that Williams's claims are deficient as pled. I will therefore not dismiss Williams's claims based on the <u>Remick</u> settlement.

23. Because the judgment in <u>Remick</u> did not become final until after Defendants filed their motion to dismiss, neither party has addressed whether that judgment may have preclusive or other effect in this case, and I will therefore not address those issues at this time.

6

**D. Availability of Release**

24. Defendants argue that to the extent Williams requests to be released, such a request should be dismissed because the procedural requirements of the Prison Litigation Reform Act have not been met. See 18 U.S.C. 3626(a)(3)(B). Defendants also argue that a claim seeking release can only be brought in habeas. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact . . . of his physical imprisonment, and the relief he seeks is a determination that he is entitled to . . . release . . . , his sole federal remedy is a writ of habeas corpus.").

25. Because it is unclear that Williams is even seeking release, and because Williams would need to meet a significant burden to prove that release is an appropriate remedy, I will not now address the difficult and unsettled legal question of whether release from pretrial detention is a viable remedy in a § 1983 action. See Jorge V.S. v. Green, No. 20-cv-3675, 2020 WL 1921936, at *2 (D.N.J. Apr. 21, 2020) (noting the lack of settled law on the question). I will hold this portion of Defendants' motion under advisement.

**E. Macing Incident**

26. Defendants ask that Williams's claim that Defendant Slater sprayed Williams with mace for asking to speak with a supervisor should be dismissed because Williams does not allege the "date, time or location of this interaction."

27. It appears Williams intends to bring a First Amendment retaliation claim with respect to this incident. "To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown,

7

455 F.3d 225, 241 (3d Cir. 2006).

28. Because Williams alleges that he asked Slater to speak to a supervisor about locked-in-cell time and Slater responded by spraying Williams with mace, Williams has plausibly alleged that he engaged in First Amendment protected activity that was a substantial factor in Slater's alleged retaliatory response. I will therefore deny Defendants' motion as to this claim.

F. Thirteenth Amendment Claim

29. Defendants ask that Williams's claim under the Thirteenth Amendment be dismissed because paying pretrial detainees inadequate wages for their work does not violate the Thirteenth Amendment.

30. The Thirteenth Amendment's prohibition on "involuntary servitude" makes unlawful "forced labor through physical coercion." Steirer v. Bethlehem Area Sch. Dist., 987 F.2d 989, 998 (3d Cir. 1993). But "not … every situation in which an individual faces a choice between labor or legal sanction constitutes involuntary servitude." Id. at 999. Rather, the Thirteenth Amendment prohibits only forced labor that is "akin to African slavery." Id. at 1000. For example, "it is not involuntary servitude to offer prisoners an option of participating in a work-release program, even though the consequence of not working and remaining in jail may be 'painful.' " Id.

31. Williams's Complaint alleges only that wages for inmate workers are too low; it does not allege that Williams was subject to "forced labor through physical coercion," or anything remotely "akin to African slavery." I will therefore dismiss this claim.

G. Indifference to Medical Needs

32. Defendants contend that Williams has alleged insufficient facts to make out a claim for indifference to medical needs.

33. I do not read Williams's Second Amended Complaint as raising a claim that Defendants were indifferent to Williams's medical needs. Rather, Williams's allegation that inmates are not permitted to shower is related to his conditions-of-confinement claim that unsanitary conditions at CFCF spread covid-19. Because a claim of indifference to medical needs was not raised, I will not address whether it is sufficiently pled.

## IV. CONCLUSION

34. For the reasons set out above, I will grant in part and deny in part Defendants' motion to dismiss. A court dismissing a pro se complaint must give the plaintiff leave to amend unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002). Because Williams has already had two opportunities to amend his pleading, I will not grant leave to amend a third time. See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew, 944 F.3d 478, 483 (3d Cir. 2019) (denying amendment where plaintiff "already had two chances to tell his story").

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion to Dismiss (ECF No. 32) is **GRANTED in part and DENIED in part** as follows:

35. All claims against Warden Michelle Farrell and John Doe Superintendent are **DISMISSED**.

36. All claims against the City of Philadelphia, Commissioner Blanche Carney, and all Defendants in their official capacities with respect to the alleged macing incident are **DISMISSED**.

37. Williams's Thirteenth Amendment claims are **DISMISSED** as to all Defendants.

38. Defendants' motion to dismiss is **DENIED** as to Williams's conditions-of-confinement claim against the City of Philadelphia and Commissioner Blanche Carney.

39. Defendants' motion to dismiss is **DENIED** as to Williams's claim against Defendant Slater only with respect to the alleged macing incident.

                                  **BY THE COURT:**

                                  */s/ Mitchell S. Goldberg*

                                  **MITCHELL S. GOLDBERG, J.**